**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

TOMMY BADY,

     Plaintiff,

v.                                                                 Case No. 2:21-cv-2693-MSN-cgc

                                             **JURY DEMAND**

ILLINOIS CENTRAL RAILROAD
COMPANY,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

       Before the Court is Defendant's Motion to Dismiss, filed November 23, 2021.  (ECF No.

8.)  Plaintiff filed a timely Response to Defendant's Motion on December 20, 2021.  (ECF No.

12.)  Defendant filed a Reply to Plaintiff's Response on January 3, 2022.  (ECF No. 15.)  For the

reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

## BACKGROUND

       Plaintiff, an African-American male, brought this seven-count action against Defendant

arising out of Defendant's response to the alleged conduct of two of Plaintiff's coworkers:

Tommy Langston and Tracy Owens, both of whom are white males.  (ECF No. 1.)[1]

       On June 18, 2018, Defendant hired Plaintiff as a machinist apprentice.  (*Id.* at PageID 2.)

According to the Complaint, in September of 2020, Langston and Owens "touched and drew a

---

[1] Plaintiff asserts in the Complaint that he filed a charge of discrimination with the Equal
Employment Opportunity Commission and received a Notice of Right to Sue around August 5,
2021.  (ECF No. 1 at PageID 2.)

chalk line down Plaintiff's buttock" as he was "bent over with his upper torso inside an engine compartment." (*Id.* at PageID 2–3.) Plaintiff further alleges that Langston and Owens then posted a photo of the chalk line on Owens's Facebook page with a caption saying "Never take it easy on your apprentices! Especially if you have a piece of chalk handy!!" (*Id.* at PageID 3.) Another machinist reported this incident to Defendant, and management "questioned" Owens and Langston about it. (*Id.*) Plaintiff claims that "[r]ather than correct the behavior," Defendant gave one of the employees (he does not specify which one) a 15-day record suspension for using a cell phone on company property. (*Id.*)

A little under two weeks after the chalk incident occurred, while Plaintiff and other employees were in the locker room, Owens allegedly said to Plaintiff "Hey, big red, I have two pieces of chalk in my toolbox if you want to sit on them." (*Id.*) Following this event, Plaintiff says he went to Defendant's Mechanical Supervisor Frank Perry and reported both the chalk incident and the locker room incident. (*Id.*) He also told Perry that "this had been going on since he was hired and he could not deal with Owen's [sic] and Langston's unwanted and inappropriate touching and inappropriate comments." (*Id.*) Plaintiff contends that Defendant took no further action. (*Id.*) On October 5, 2020, Plaintiff requested medical leave "due to anxiety and stress" arising out of his work situation and has not returned to work since. (*Id.*)

## **STANDARD OF REVIEW**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Using this framework, the court determines whether the complaint alleges "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  A complaint need not contain detailed factual allegations; however, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, the "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 556.

## DISCUSSION

Defendant moved to dismiss Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Counts I, II, and III) and the Tennessee Human Rights Act ("THRA") (Counts IV, V, and VI), as well as Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") (Count VII[2]).  In his response, Plaintiff conceded that his claims under the THRA and his IIED claim should be dismissed.  (ECF No. 12 at PageID 45, 47.) Consequently, the Court only considers Plaintiff's claims under Title VII (Counts I, II, and III).

---

[2] The Complaint lists two of the counts—one for retaliation in violation of the Tennessee Human Rights Act and one for intentional infliction of emotional distress—as "Count VI."  (ECF No. 1 at PageID 7.)  For clarity, the Court refers to the IIED claim as Count VII.

For Title VII claims, a plaintiff is not required to establish a prima facie case to survive a motion to dismiss for failure to state a claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). However, while establishing a prima facie Title VII case is not required at this stage, the Sixth Circuit has made clear that *Swierkiewicz* and *Twombly* are consistent with each other such that a plaintiff must still satisfy the "plausibility" standard. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570) ("*Twombly* distinguished *Swierkiewicz*, explaining that the prior case 'did not change the law of pleading,' but simply reemphasized that application of the *McDonnell Douglas* prima facie case at the pleading stage 'was contrary to the Federal Rules' structure of liberal pleading requirements.'"); *Smith v. Wrigley Mfg. Co., LLC*, 749 Fed. App'x 446, 448–49 (6th Cir. 2018) ("*Swierkiewicz* . . . 'did not change the law of pleading' . . . [a]s such, it offers no gateway for a plaintiff to side-step the 'plausibility' standard laid out in *Twombly* and *Iqbal.*").

## I.    Hostile Work Environment Claims (Counts I and II)[3]

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against someone because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). This prohibition also forbids "requiring people to work in a discriminatorily hostile or abusive environment." *Bar v. Kalitta Charters II, LLC*, No. 21-1739,

---

[3] The Complaint generally describes Counts I and II as "Discrimination in Violation of Title VII." (ECF No. 1 at PageID 4.) More specifically, these claims appear to be hostile work environment claims based on Plaintiff's sex (Count I) and race (Count II). Plaintiff's treatment of these Counts in his response brief similarly indicates that the Court should construe them as hostile work environment claims and apply that analysis. (*See, e.g.,* ECF No. 12 (applying hostile work environment analysis to his "discrimination" claims in Section IV.))

2022 WL 3042844, at *3 (6th Cir. Aug. 2, 2022) (quoting *Harris v. Forklift Sys., Inc.*, 520 U.S. 17, 21 (1993)).

To state a claim for hostile work environment under Title VII, the plaintiff must make direct or inferential allegations that:

> (1) [he] belonged to a protected group, (2) [he] was subject to unwelcome harassment, (3) the harassment was based on [race or sex], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813–14 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).  A hostile work environment exists when a "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quoting *Harris*, 510 U.S. at 21).  As noted, however, while a plaintiff must still meet the "plausibility standard" at this stage, he is not required to establish all of these elements at the pleading stage.

Plaintiff has alleged both sex (Count I) and race (Count II) discrimination under Title VII.  (ECF No. 1 at PageID 4–5.)  Defendant argues that both claims should be dismissed because Plaintiff "fails to allege any facts that would support a gender or race harassment claim under . . . Title VII."  (ECF No. 8-1 at PageID 28.)  From Defendant's view, not only has Plaintiff failed to allege that the two employees' actions were motivated by Plaintiff's sex or race, but the conduct alleged also does not rise to the level of offensiveness necessary to support Plaintiff's claims.  (*Id.* at PageID 29.)  From Plaintiff's standpoint, "behavior that included touching of his buttocks and posting of pictures on the internet showing the inappropriate touching" is offensive enough to create an actionable claim for race and sex discrimination that

created a hostile work environment.  (*Id.*)  Concerning Defendant's motivations, Plaintiff

responds that Defendant would have responded more forcefully were he a female employee.  (*Id.*

at PageID 49.)

 Here, Plaintiff's discrimination claims must fail because he has not plausibly pled that

Defendant is liable for a hostile work environment based on race or sex.

### 1.      Severity and Pervasiveness of the Alleged Harassment

First, Plaintiff has not alleged facts supporting a plausible claim that his alleged

harassment was sufficiently severe or pervasive to constitute a hostile work environment under

Title VII.  Whether conduct was sufficiently severe and pervasive is based on the totality of the

circumstances.  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)

(citing *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)).  Some factors courts

consider in determining whether a hostile work environment exists include "the frequency of the

discriminatory conduct; its severity; *whether it is physically threatening or humiliating, or a

mere offensive utterance*; and whether it unreasonably interferes with an employee's work

performance."  *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008) (quoting *Harris*, 510 U.S. at

23).  "[M]erely offensive" conduct is not sufficient to support a hostile work environment claim.

*Harris*, 510 U.S. at 21.  "Simple teasing, [] offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S.

at 23).  This analysis should "include[] all incidents of alleged harassment . . . ."  *Gen. Motors

Corp.*, 187 F.3d at 563.

Drawing a chalk line down Plaintiff's buttock without his knowledge or consent, posting

a photo about it, and making a comment likely to offend Plaintiff is not conduct suitable for the

workplace. But neither is it indicative of an environment so "permeated with discriminatory intimidation, ridicule, and insult" as to be considered abusive. Rather, these facts demonstrate a situation more akin to the "[s]imple teasing, [] offhand comments, and isolated incidents (unless extremely serious) [that] will not amount to discriminatory changes in the terms and conditions of employment. *Faragher*, 524 U.S. at 787 (1998) (citing *Harris*, 510 U.S. at 23).

First, the alleged conduct was infrequent. While the Complaint suggests harassment was ongoing,[4] it only provides descriptions of two incidents—the chalk incident (including the accompanying post on Facebook) and the locker room incident. (*See* ECF No. 1.) That Plaintiff suffered two (or three to include the Facebook post) relatively minor incidents over more than two years of employment with Defendant is not the kind of frequency Title VII has in mind.[5] Courts have declined to find a hostile work environment when conduct was not even a weekly event. *See, e.g., Kelly v. Senior Ctrs., Inc.*, 169 F. App'x 423 (6th Cir. 2006) (finding that two uses of the "n" word, three racist "jokes," and other comments about African-Americans did not create an actionable hostile work environment claim partly because "such conduct . . . was not a daily or even a weekly event").

Second, the conduct—while no doubt unwelcome and offensive to Plaintiff—was not severe or physically threatening. The chalk incident, though it involved physical contact, went unnoticed even by Plaintiff for a time, and Plaintiff was unaware of the Facebook post until it

---

[4] *See* ECF No. 1 at PageID 2 ("From the onset of his employment, Plaintiff was subjected to harassment and unwanted, sexually inappropriate touching by [Defendant's] employees . . . .") and PageID 3 (alleging that Plaintiff told his supervisor that "this had been going on since he was hired").

[5] As noted, the Complaint could be read to suggest that other conduct by Owens and Langston occurred during Plaintiff's employment with Defendant, but it provides no facts to corroborate that insinuation.

was brought to his attention by another employee.  (ECF No. 1 at PageID 3.)  These facts belie any contention that the conduct, albeit unwise and inappropriate, was intended to threaten Plaintiff.  The locker room incident did not involve inappropriate touching, but rather an inappropriate comment.  Other "courts have found that '[o]ne or two comments . . . do not result in a work environment that is so intolerable that it would force any reasonable employee to resign.'"  *Ragland v. F&M Koz, Inc.*, No. 2:21-cv-02530-TLP-cgc, 2022 U.S. Dist. LEXIS 56653, at *13 (W.D. Tenn. Mar. 29, 2022) (quoting *Kaminski v. Hillman Grp., Inc.*, No 1:19-cv-1010, 2021 U.S. Dist. LEXIS 31946, at *3 (S.D. Ohio Feb. 22, 2021)).

In short, even "conduct that is deplorable, off-color, or offensive to our most basic value of according respect and dignity to every person, is not always legally actionable as a 'hostile environment,'" *Kelly*, 169 F. App'x at 429, and what Plaintiff has alleged falls short of that.  This principle that conduct must be extreme to be actionable has led courts to reject claims of hostile work environments at the motion to dismiss stage that alleged more offensive or frequent conduct than what Plaintiff alleges here.  S*ee, e.g., Middleton v. United Church of Christ Bd.*, No. 20-4141, 2021 WL 5447040, at *5 (6th Cir. Nov. 22, 2021) (finding that the district court applied the correct Rule 12(b)(6) standard in finding plaintiff's allegations, which included two offensive comments based on the plaintiff's race, did not rise to the level of pervasiveness or severity necessary to survive a motion to dismiss).

Third, Plaintiff has not provided evidence to support a reasonable inference that these alleged actions of his coworkers affected his ability to perform his job.  Plaintiff alleges that he requested a medical leave of absence "due to anxiety and stress due to his work situation."  (ECF No. 1 at PageID 3).  But even if this allegation was meant to indicate that he requested the leave because the alleged harassment caused him anxiety and stress, and thus made it more difficult to

do his job, it would be no more than a conclusory statement void of supporting factual content. Accordingly, there is no evidence from which the Court can draw a connection between the alleged harassment and an interference with Plaintiff's job performance necessary to support a hostile work environment claim under Title VII.  *See Keys v. Humana*, No. 3:09-cv-00834-CRS, 2013 U.S. Dist. LEXIS 151242 (W.D. Ky. Oct. 13, 2013) (citing *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 274 (6th Cir. 2009)) (finding that plaintiff's allegations concerning negative comments from three coworkers, a Vice President of Sales, and a Manager failed to establish a hostile work environment capable of surviving a motion to dismiss when the plaintiff did not provide evidence that the harassment made it harder to perform her job).

While Plaintiff is not required to make out a prima facie case at the pleading stage, he is still required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Even assuming the truth of the facts Plaintiff alleges in his Complaint, they do not support a plausible claim Defendant is liable for the hostile work environment Plaintiff alleges.

### 2.      Plaintiff's Race or Sex as Basis for Alleged Harassment

Neither has Plaintiff offered facts that would permit the Court to draw the reasonable inference that the alleged harassment he faced was based on either his sex or his race.  Under Title VII, "[m]ere disrespect or antipathy will not be actionable . . . unless a plaintiff can prove that such was motivated by discriminatory animus." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020).  Conduct "need not be overtly sexual in nature" to support a sexual harassment claim . . . .  *Any* unequal treatment of an employee *that would not occur but for the employee's gender* may, if sufficiently severe or pervasive . . . constitute a hostile environment in violation of Title VII." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999).

Plaintiff "may show race-based harassment with either '(1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace.'" *Wade v. Automation Pers. Servs.*, 612 F. App'x 291, 298 (quoting *CSX Transp. Co., Inc.*, 643 F.3d at 511).

Here, there is scant evidence at best that the actions of either Owens, Langston, or Defendant had as their basis Plaintiff's sex or race. The closest the Complaint comes to alleging sex discrimination by Defendant is its assertion that "[s]ex was a motivating factor in [Defendant's] treatment of Plaintiff as [Owens's comment was] treated as 'locker room play.' Had Plaintiff been a female employee, Defendant would have taken severe corrective action to remedy the situation." (ECF No. 1 at PageID 4.) Plaintiff does not, however, provide any facts indicating that Plaintiff was treated differently than female employees or evidence to support an inference that such treatment would not have occurred but for his sex.

Plaintiff provides even less basis for his race discrimination claim, merely stating that "[r]ace was a motivating factor in [Defendant's] treatment of Plaintiff," (*Id.* at PageID 5), but neglecting to furnish proof showing either direct evidence of the use of race-specific terms or evidence demonstrating he was treated differently than co-workers of other races. Notably, Plaintiff did not even respond to Defendant's arguments concerning Plaintiff's race discrimination claim in his Response to Defendant's Motion to Dismiss. (*See* ECF No. 12.)

To survive a motion to dismiss, Plaintiff needed only allege "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference' that an employer violated Title VII." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). He has failed to do so.

**B.      Retaliation Claim (Count III)**

Plaintiff similarly fails to plausibly plead retaliation under Title VII.  (ECF No, 1 at

PageID 5.)  The prima facie elements of a Title VII retaliation claim are:

> (1) [the plaintiff] engaged in activity protected by Title VII; (2) the exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995–96 (6th Cir. 2009) (quoting *Morris v.*

*Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000)).  To establish an adverse

employment action, "a plaintiff must show that a reasonable employee would have found the

challenged action materially adverse, 'which in this context means it well might have dissuaded

a reasonable worker from making or supporting a charge of discrimination.'"  *White,* 548 U.S. at

68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal citations

omitted).  "Alternatively, a plaintiff may establish a prima facie case of retaliation by showing

that, instead of suffering an adverse employment action, [he] 'was subjected to severe or

pervasive retaliatory harassment by a supervisor.'"  *Haywood v. DeJoy*, No. 21-6030, 2022 WL

16647967, at *3 (6th Cir. Oct. 6, 2022) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730

n.5 (6th Cir. 2014)).  To satisfy causality, "a plaintiff must proffer evidence sufficient to raise the

inference that [the] protected activity was the likely reason for the adverse action." *Lindsey v.*

*Whirlpool Corp.*, 295 F. App'x 758, 769 (6th Cir. 2008).  As discussed above, a Title VII

plaintiff need not establish a prima facie case at the pleading stage.

Defendant argues that Plaintiff's retaliation claim should be dismissed because Plaintiff

"does not plead that he suffered any adverse employment action whatsoever, much less conduct

tied to his alleged protected activity," and so "fails to state a plausible claim for relief."  (ECF

No. 8-1 at PageID 31.)  Plaintiff responds that Defendant's "inaction was retaliation for

[Plaintiff] trying to put a stop to the pervasive environment in Defendant's shop." (ECF No 12 at PageID 50.)  Defendant replies that "[r]etaliation contemplates some affirmative action by an employer." (ECF No. 15 at PageID 61.)

Here, Plaintiff's retaliation claim must fail because the Complaint fails to plausibly plead an adverse employment action.

### 1.    Adverse Employment Action

It is not apparent from the Complaint what adverse employment action Plaintiff alleges Defendant took against him.[6]  Plaintiff merely claims that Defendant's "actions in retaliating against Plaintiff for complaining about the hostile work environment constitutes retaliation in violation of Title VII . . . ." (ECF No. 1 at PageID 5.)  The Complaint does not specify what those actions are, though.  When construed in the light most favorable to the Plaintiff, it is possible the Complaint means to allege that Defendant's retaliatory action was its "fail[ure] to take prompt and corrective action in order to protect the Plaintiff and prevent a hostile working environment from existing." (*Id.* at PageID 4.)  This alleged failure could take the form of either Defendant's response to the chalk incident, which Plaintiff believes was insufficient, or Defendant's response to the locker room incident, which Plaintiff alleges was nonexistent.

To the Court's knowledge, the Sixth Circuit has not directly addressed whether inaction can constitute an adverse employment action.  Courts have answered the question differently. *Compare Carter v. Toyota Motor Mfg.*, No. 5:15-373-DCR, 2017 U.S. Dist. LEXIS 73233, at *50 n. 23 (E.D. Ky. May 15, 2017) (Title VII "[r]etaliation requires an adverse action of the employer, or at least employer inaction in the face of employee misconduct"), *and Lewis v. D.C.*,

---

[6] Plaintiff does not allege that he 'was subjected to severe or pervasive retaliatory harassment by a supervisor,'" *Haywood*, 2022 WL 16647967, at *3 (quoting *Laster*, 746 F.3d at 730 n.5), which is the other way a plaintiff can satisfy the third prong of a retaliation claim.

885 F. Supp. 2d 421, 428 (D. D.C. 2012) (quoting *White*, 548 U.S. at 68) (finding that plaintiff had "alleged a concrete injury resulting from [her superior's] alleged inaction and ha[d] thus provided a sufficient basis for concluding that it 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination'"); *with Cooper v. Smithfield Packing Co.*, No. 7:13-CV-00145-F, 2014 U.S. Dist. LEXIS 25167, at *7 (E.D.N.C. Feb. 27, 2014) (holding that defendant's failure to respond to plaintiff's complaints was insufficient to suggest retaliation), *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 546–47 (W.D. Pa. 2010) (noting that the plaintiff had not pointed to any decision holding that an employer's failure to take corrective action could serve as an adverse employment action for purposes of retaliation under Title VII), *Robinson v. G.E. Aviation*, No. 7:10-CV-00240-BR, 2012 WL 607559, at *2 (E.D.N.C. Feb. 24, 2012) (holding that "inaction" does not constitute retaliation for purposes of Title VII), *and Payne v. Brennan*, No. PX 16-1095, 2018 U.S. Dist. LEXIS 24742, at *16 (D. Md. Feb. 15, 2018) (citing *Robinson*, 2012 WL 607559, at *2) ("[A] retaliation claim cannot be based on Defendant's inaction in the wake of a grievance).

While the Court can conceive of hypothetical situations in which an employer's inaction might rise to the level of an adverse employment action for purposes of Title VII, it has little difficulty concluding that such is not the case here. Even assuming Defendant's responses to both incidents were insufficient, the Court does not find it plausible that a reasonable employee would find the responses under these circumstances "materially adverse" such that he would be dissuaded "from making or supporting a charge of discrimination" because of them. *White,* 548 U.S. at 68 (quoting *Rochon*, 438 F.3d at 1219). In fact, Plaintiff says the only action Defendant did take after he reported the locker room incident was to grant Plaintiff's request for a medical leave of absence, which it did only six days after the locker room incident occurred. While

perhaps not sufficient to cure a claim of retaliation, this decision, and the short duration of time in which Defendant could have investigated or otherwise responded to the locker room incident before Plaintiff's request for leave, would not deter a reasonable employee from reporting discrimination.  Plaintiff has not plausibly pled an unlawful employment action.  The Court **GRANTS** Defendant's motion to dismiss Count III.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendant's Motion to Dismiss Counts I, II, and III is **GRANTED**.  For the reasons outlined in Defendant's Motion to Dismiss and as conceded by Plaintiff, Defendant's Motion to Dismiss Counts IV, V, VI, and VII is also **GRANTED**.

**IT IS SO ORDERED**, this 13th day of March, 2023.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE